[No. B020374. Second Dist., Div. Four. Oct. 31, 1986.]

JAMES F. MITCHELL, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
NATIONAL UNION FIRE INSURANCE COMPANY,
Real Party in Interest.

**COUNSEL**

Eckhoff, Hoppe, Slick, Mitchell & Anderson, James F. Mitchell and John H. Banister for Petitioner.

No appearance for Respondent.

W. C. Miller for Real Party in Interest.

## OPINION

**WOODS, P. J.**—This original proceeding in mandate presents a venue question. Petitioner seeks to overcome the general venue rule, in breach of contract actions, that the county in which the contract was made shall be deemed to be the county in which defendant was to perform. The question presented is what contractual provisions constitute "a special contract in writing to the contrary" within the meaning of Code of Civil Procedure section 395, subdivision (a).[1]

The superior court appellate department held, following two prior reported appellate department decisions, that the statutory provision does not require that the county wherein defendant is intended to pay an obligation be specified in the written contract, and that parol evidence may establish a location other than that indicated as the office of plaintiff on the face of the written contract.

We conclude that the municipal court and the appellate department exceeded their jurisdiction by failing to follow a plethora of controlling case law that unequivocally establishes a contrary rule. (See *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 542-543, 564 [96 Cal.Rptr. 709, 488 P.2d 13].)

The material facts are not disputed and are all contained in the record.

Real party in interest (hereafter referred to as National) filed an unverified two-count complaint in municipal court in Los Angeles County against petitioner attorney (Mitchell) and the other members of his Contra Costa County law firm partnership. The action seeks recovery of $5,000 which National, a professional liability insurer, claims is due it for defending the law firm against a prior malpractice claim. National claims entitlement under the insurance contract's provision for reimbursement of the $5,000 "defense costs" deductible. The complaint alleged that the contract was made, and that defendant's payment was to occur, in Los Angeles County. Defendants contend that they do not owe the $5,000 because the malpractice claim was

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

covered by the carrier's prior "occurrence" policy that has no deductible for defense costs.

Mitchell moved for change of venue to a municipal court in Contra Costa County. The motion was supported by Mitchell's declaration that he and all his defendant partners are, and were at the commencement of the present action, residents of Contra Costa County. He averred that the subject liability insurance contract was a renewal of prior policies issued by American Home Assurance Company, and that he mailed the renewal application to the offices of American at the New York address shown for American on the renewal application and upon the "Declarations" page of the renewal policy.

Mitchell also states that American accepted the policy application at its offices in New York. He subsequently received by mail from New York City a copy of the fully executed policy.

The authenticated copy of the executed policy attached to the Mitchell declaration contains this recitation in the following style at the left top of the "Declarations" page:

"A MEMBER OF THE
AMERICAN INTERNATIONAL GROUP
EXECUTIVE OFFICES
102 MAIDEN LANE
NEW YORK, N.Y. 10005

COVERAGE IS PROVIDED IN THE
COMPANY DESIGNATED
A STOCK INSURANCE COMPANY
(HEREIN CALLED THE COMPANY)

AMERICAN HOME ASSURANCE COMPANY"

The address is the sole address for American appearing on the policy or the application. The top of the face sheet of the policy recites the same New York address for American and a New York address for National. (Apparently the same preprinted policy form is used by both American and National with the issuer designated by checking of a box.) No other address is stated for National on the policy.

The policy provision entitled "Reimbursement of the Company" provides that the insureds shall be liable to reimburse "the Company" for all appli-

cable deductibles and "shall pay such amounts *to the Company.*" (Italics added.)

Nowhere in the contract of insurance is there any specification of where the insured is to pay this reimbursement of the deductible to "the Company." Nowhere is there any reference by address or otherwise to any California office of "the Company."

The policy provides that insureds shall forward all claims to "the Company." Mitchell mailed his claim to American at the New York City office address designated above. That claim was acknowledged by a letter from American emanating from its New York office.

In addition to contending that under applicable venue rules the insurance contract was made either in San Francisco County or New York, Mitchell's motion also challenged the very status of plaintiff National to claim that it is the issuing carrier referred to as "the Company" in the contract of insurance. Mitchell relied upon the policy itself, which as described above identifies American as the issuer, as well as American's response to Mitchell's notice of claim.

The opposition filed by National consisted of the affidavit of its claims manager executed in New York. It stated that National had but one claims office in California "at the time of this claim." That claims office is located in Los Angeles and handles for both American and National all legal malpractice claims concerning California insureds. Claims are either mailed directly to this Los Angeles office or forwarded by defense carriers. National mailed its demand for payment of the deductible from this Los Angeles office.

On this showing, National contends that the defendants' obligation to reimburse National the $5,000 deductible was contracted to be performed in Los Angeles.

The municipal court denied the motion without a statement of grounds.

Mitchell appealed this ruling to the Los Angeles Superior Court Appellate Department, pursuant to section 904.2, subdivision (c).

The appellate department affirmed the denial in a written decision. The department denied Mitchell's petition, filed pursuant to California Rules of Court, rule 62, for certification of the decision for publication or for transfer of the case to the Court of Appeal. As will be discussed in detail, the opinion was based upon prior reported decisions of other appellate depart-

ments. (*Morthrift Plan* v. *Fischer* (1961) 196 Cal.App.2d Supp. 865 [17 Cal.Rptr. 607]; *Inglewood Thrift & Loan* v. *Colby* (1961) 188 Cal.App.2d Supp. 857 [10 Cal.Rptr. 814].)

We issued the alternative writ under section 1086 because the petition made a prima facie showing that the appellate department and the municipal court exceeded their respective jurisdictions by failing to follow controlling case authority. (See *Randone* v. *Appellate Department, supra,* 5 Cal.3d at pp. 542-543, 564; *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

The return filed by National argues only the incorrect position that the appellate department decision may not be reviewed by this court because section 400 provides only for mandate review of superior court orders granting or denying motions for change of venue. The return urges that the remedy of appeal is available to Mitchell and that because appeal is not an inadequate remedy, extraordinary writ review is improvidently granted. The return also elected to "rely upon the well reasoned opinion of the Appellate Department."

I

The controlling provisions of section 395, subdivision (a), are as follows: "Subject to the provisions of subdivision (b), when a defendant has contracted to perform an obligation in a particular county, either the county where such obligation is to be performed or in which the contract in fact was entered into or the county in which the defendant or any such defendant resides at the commencement of the action shall be a proper county for the trial of an action founded on such obligation, *and the county in which such obligation is incurred shall be deemed to be the county in which it is to be performed unless there is a special contract in writing to the contrary.*" (Italics added.)

Thus, the general rule is that only two proper venues exist: the county where the contract was entered into (obligation incurred) and the county of defendant's residence. A third proper venue will arise only when there is "special contract in writing to the contrary."

Before reaching the determinative issue whether the underlying contract meets the "special contract in writing" requirement, it is necessary to set forth some general rules applicable to motions for change of venue that will focus our analysis.

The place of the making of a contract is where the last act necessary to the validity and binding effect thereof is performed. This "last act" is

usually the acceptance of the offer. (*Braunstein* v. *Superior Court* (1964) 225 Cal.App.2d 691, 696 [37 Cal.Rptr. 666].) This place of making is the place where the obligation of the defendant arises unless there is a special contract in writing to the contrary. (*Armstrong* v. *Smith* (1942) 49 Cal.App.2d 528, 533-534 [122 P.2d 115].)

The performance material under section 395 is the performance of the defendant. (*Meyer* v. *Burdett Oxygen Co.* (1959) 170 Cal.App.2d 519, 523 [339 P.2d 243].)

■ The burden of proof to negate proper venue in the county where the action is commenced is upon the party seeking to change venue. The prima facie presumption that plaintiff has selected the proper venue must be overcome by that moving party. (*Ward Mfg. Co.* v. *Miley* (1955) 131 Cal.App.2d 603, 606-607 [281 P.2d 343]; *Hearne* v. *De Young* (1896) 111 Cal. 373, 376 [43 P. 1108].)

It is the moving defendant's burden to demonstrate that the plaintiff's venue selection is not proper under any of the statutory grounds. Thus, here defendant must show (1) that Los Angeles County is not where the contract was made; (2) that Los Angeles County was not the residence of the defendants at the time the action was commenced; and (3) that there is no "special contract in writing" specifying defendant's performance was to occur in Los Angeles County.

■ A defendant entitled to a change of venue as to one count in a multiple count complaint is entitled to the change as to the entire action. (*Jhirmack Enterprises, Inc.* v. *Superior Court* (1979) 96 Cal.App.3d 715, 720 [158 Cal.Rptr. 192].)

■ Under these fundamental principles, the place of making the insurance contract, and thus also the place of intended performance, would be either New York City or San Francisco (the places where the "last acts" forming the contractual relationship occurred) unless there was a "special contract in writing to the contrary." The existence of such a special written contract is, of course, the determinative issue in this proceeding.

The controlling case construing the "special contract in writing" exception of section 395 is *Armstrong* v. *Smith, supra,* 49 Cal.App.2d 528. The *Armstrong* construction was expressly followed in *Caffery* v. *Tilton* (1952) 38 Cal.2d 371 [240 P.2d 273], and in numerous reported opinions of the Court of Appeal.

In *Armstrong, supra,* plaintiff contracted in writing with defendant to construct a house on defendant's property located in the County of Alameda.

The contract was executed by the parties in San Francisco. At the time the action was commenced, the defendant resided in San Mateo County. Plaintiff commenced an action in Alameda County Superior Court seeking to recover damages for breach of contract. He claimed that defendant had breached the implied-in-law obligation not to prevent plaintiff from performing the construction work pursuant to plaintiff's contractual obligation. Defendant moved to change venue to the county of his residence.

Based upon the definition of "special contract" derived from existing case law, the *Armstrong* court determined that the Legislature intended the term "special contract in writing to the contrary" to require an express specification in the written contract that defendant's performance is to be in a particular county. If no such express specification on this subject appears on the face of the contract, none may be supplied by implication or extrinsic facts. A special contract is ". . . one in which there is expressed particular stipulations with respect to the obligations of the parties, and which, if omitted, the law will not supply. [Citations.]" (49 Cal.App.2d at p. 535.) "'An express contract may or may not be special. But a special contract is always express.'" (*Ibid.*)

Foundational to the *Armstrong* construction was application of the rule of statutory construction that in determining the intent of the Legislature courts should attempt to give reasonable meaning to every word and phrase so that, where possible, no term is rendered meaningless. (49 Cal.App.2d at p. 536.)

*Armstrong* held that the denial of defendant's motion for change of venue was erroneous because the subject written contract contained no express, special designation that defendant was to perform his obligation in the county where the action was commenced.

In its decision in the underlying appeal, the appellate department purported to distinguish *Armstrong* on the following basis: "We also find the *Armstrong* case distinguishable from the facts at bench. *Armstrong* concerned an implied obligation to permit a building contractor to build according to the terms of the contract; a matter outside the express terms of the contract." The court adopted this singular distinction from *Morthrift Plan* v. *Fischer, supra,* 196 Cal.App.2d Supp. at page 868.

However, this precise basis for distinguishing *Armstrong* was expressly rejected in *Caffrey* v. *Tilton, supra,* 38 Cal.2d 371. *Caffrey* pointed out that: "It is argued that the *Armstrong* case is distinguishable on the ground that the obligation sued on was an implied obligation while it is claimed that the obligation here sued on is express. Such a distinction is untenable. The

portion of section 395 of the Code of Civil Procedure referred to is concerned with the requirement of a definitely expressed place of performance of an obligation and not with the terms of the obligation itself. Since that section definitely specifies that the county where the obligation is incurred is deemed to be the county in which it is to be performed in the absence of a 'special contract in writing to the contrary,' and since no such contract has been shown, the trial court was in error in denying the defendant's motion." (*Id.*, at p. 374.)

*Caffrey* involved an action for declaratory relief based upon a disputed breach of a written contract of employment. Plaintiff commenced the action in San Francisco, where he resided. The written contract was executed in Los Angeles, and defendant was at all times a resident of Los Angeles. Venue would thus not lie in San Francisco unless a "special contract in writing" specified San Francisco as the place for defendant's performance. The written agency employment contract provided that plaintiff would be defendant's sales representative for the northern California area on a commission basis. It specified a customer list. Defendant later attempted to prohibit plaintiff from selling to one of the customers so designated in the contract. Defendant unilaterally announced that the contract would be deemed revoked if plaintiff did not wish to continue his agency under this restriction. Plaintiff's action claimed breach of the contract and sought damages for lost commissions.

On appeal from an order denying defendant's motion to change venue to Los Angeles County the Supreme Court reversed the order of denial. It rejected plaintiff's argument that the general provisions of section 1489 of the Civil Code operate to make San Francisco the implied place of defendant's performance obligation. The court expressly adopted as controlling the *Armstrong* construction. It held that the subject written contract thus did not meet the requirement that a section 395 "special contract to the contrary" be express rather than one implied by law or by extrinsic facts. (*Caffrey* v. *Tilton, supra,* 38 Cal.2d at p. 374.) The Supreme Court's adoption of the *Armstrong* construction as controlling was necessary to the *Caffrey* decision because *Caffrey* acknowledged that section 1489 of the Civil Code "may be assumed to be an implied provision of the agreement, . . ." that would place venue in the county of plaintiff's residence (San Francisco).

Neither respondent appellate department nor the appellate department in *Morthrift Plan* v. *Fischer, supra,* 196 Cal.App.2d at page 868, indicate awareness of *Caffrey*'s adoption of the *Armstrong* construction or of *Caffrey*'s express rejection of their ground for distinguishing *Armstrong*.

*Armstrong, supra,* 49 Cal.App.2d 528, and *Caffrey, supra,* 38 Cal.2d 371, have been cited by numerous subsequent cases as controlling the construction of the section 395 "special contract in writing to the contrary" exception. (See generally 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, §§ 601-602, pp. 620-622.)

In *Wathen* v. *Superior Court* (1963) 212 Cal.App.2d 125 [27 Cal.Rptr. 840], the court followed *Armstrong* to require a specific designation of the county of defendant's performance on the face of the written contract. The contract required defendant to deliver items "to the McMillian Mortgage Company." That company had numerous offices throughout northern California. But the contract was written under the letterhead of that company stating the particular company address of "4216 El Camino Real, Palo Alto, California." *Wathen* held that the *Armstrong* standard was met by this express designation of address on the face of the contract.

*Causley* v. *Superior Court* (1968) 267 Cal.App.2d 757 [73 Cal.Rptr. 585], involved a Sonoma County action for breach of the payee's obligation under a promissory note. The note specified on its face that payment was to be made "at Santa Rosa, California." No other evidence indicated a Sonoma place of performance. In the mandate proceeding arising from the granting of defendant's motion to change venue (the trial court finding that no basis existed for venue in Sonoma County), the *Causley* court followed the *Armstrong* construction requiring an express specification of the county for defendant's performance. It held that the specification before it satisfied that standard and compelled denial of the motion for change of venue.

In *Mosby* v. *Superior Court* (1974) 43 Cal.App.3d 219 [117 Cal.Rptr. 588], individuals and an unincorporated association were sued for breach of contractual obligations. All defendants moved to change venue to the county of their residence. In the mandate proceeding resulting from denial of the motion to change venue, the *Mosby* court ultimately resolved the venue dispute under sections 395.2 and 395.5, which control venue as to the defendant unincorporated association. However, in its preliminary analysis, *Mosby* addressed the question of whether the individual defendants could negate venue as laid on the basis that the contract implied a different county for performance of their contractual obligations. The *Mosby* court followed *Caffrey* v. *Tilton, supra,* 38 Cal.2d at page 374, and determined that "a 'special contract in writing' as contemplated by section 395 is one whose provisions are express and not dependent upon implication. [Citation.]" (*Mosby* v. *Superior Court, supra,* 43 Cal.App.3d at p. 224.)

In *Stute* v. *Burinda* (1981) 123 Cal.App.3d Supp. 11, 16 [177 Cal.Rptr. 102], the Los Angeles Superior Court Appellate Department determined

that *Causley* v. *Superior Court, supra,* 267 Cal.App.2d 759, was binding authority as a decision of a higher court. *Stute* involved a municipal court action for breach of contract where the written contract specified that defendant's payment obligation was to be performed "at the office of the [plaintiff] trustee in Los Angeles." (*Id.,* at p. 16.) Defendants' motion to change venue to their county of residence, Santa Barbara, was denied. On appeal, the *Stute* court determined that the "special contract in writing" exception of section 395 requires an express written specification of at least the "geographic location" of the place for defendants' performance, not necessarily a specific address. Under this standard, the written specification of location before the *Stute* court was held to constitute a "special contract" as construed in *Armstrong, supra. Stute* accordingly affirmed the municipal court order denying the change of venue.[2]

 Accordingly, for purposes of venue determination under section 395, subdivision (a) in the case before us, there is no "special contract in writing" specifying Los Angeles County as the agreed location of defendant's contractual obligation to pay the disputed deductible.

Because of our determination of the principal issue of statutory construction presented, we need not address the further question whether respondent's conclusions based on parol evidence are valid.

Let a peremptory writ of mandate issue directing respondent appellate department to vacate its opinion and judgment entered March 11, 1985, in its case No. CIV A 16722, and to forthwith enter a new and different judgment compelling the municipal court to grant the motion of defendant James F. Mitchell to change the venue of Los Angeles Judicial District case No. G 28512 to the municipal court in Contra Costa County, California.

McClosky, J., and Arguelles, J., concurred.

A petition for a rehearing was denied November 18, 1986.

---

[2]*Stute* appears to misread *Morthrift Plan* v. *Fischer, supra,* 196 Cal.App.2d Supp. at pages 867-870, as "approving the more practical requirement" of only an express specification of "a geographic designation of the city or county without setting forth the address." (*Stute* v. *Burinda, supra,* 123 Cal.App.3d Supp. at p. 16.) However, *Morthrift* held that the mere recitation in the written contract that performance was to be "at the office of Morthrift Plan [plaintiff]" was sufficient where the fact that Morthrift Plan had but one office could be established by extrinsic parol evidence to establish the intended place of defendant's performance. (*Morthrift Plan* v. *Fischer, supra,* 196 Cal.App.2d Supp. at p. 870.) It is clear from the *Morthrift* discussion that it did not consider "the office of *Morthrift Plan*" a geographic designation. (*Id.,* at p. 869.)